This time we'll hear Torres v. Graff. May it please the Court. My name is Zachary Orn and I represent the defendant appellants, the individual Utica police officers in regards to this appeal. With the Court's permission, I would like to reserve one minute for rebuttal. Done. Thank you. I have three points I would like to discuss with the Court today that all involve the qualified immunity question involving the complaint of 14th Amendment substantive due process right, specifically the substantive due process right to be free from state-created danger. Those points are, first, that there was no actual constitutional violation, meaning the 14th Amendment was not violated. Second, there is no clearly established law in regards to a 941's arrestee's victims of being able to sue the police officer that affected that arrestee's arrest. And third, that given that the law is far from clearly established, the officer's actions of taking the 941 arrestee to the hospital, telling them, if you release them, please give us a call. We would like to, if he's not committed, we would like to press charges on him, are certainly objectively reasonable in titling them to qualified immunity. So moving to my first contention, there was no actual constitutional violation. In particular here, we're talking about a state-created danger theory. Now, this court has essentially said a state-created danger theory breaks down into essentially three parts. You need affirmative action, which enhances the risk, and the action needs to be a conscious disregard and deliberate indifference. That's what they talk about. It needs to shock your conscience the action has to be so bad. Now, let's look at this case. If we look at this case specifically, and the type of theory the plaintiffs are prosecuting here, is that there needs to be an explicit or implicit prior assurance to Paul from the police officers that he could break the law and act with impunity. Now, let's look at the only affirmative actions they did here. What they did was they went into the home, they effected a 941 arrest of Paul, meaning they secured him in handcuffs, they had to physically remove him and restrain him, put him in the back of the patrol car, where the ambulance subsequently transported him to the hospital, at which point custody of Paul was turned over to the hospital, and he was at that point in their custody in care. Those are the only affirmative acts these police officers did. And this court has held that it is a seizure, it's a use of force under the Fourth Amendment to secure somebody in handcuffs, and it's a use of force to put them in the car. Moreover, if you look at the recent Coleman decision from this court, talking about state-created danger claims, they ruled that a warrant arrest is an affirmative act which does not communicate, it communicates the opposite. It says your conduct is unacceptable for society. That's exactly what these police officers did here. It was a 941 arrest, which is a civil confinement under the law, not a criminal custodial arrest. I concede that much, but it's still an arrest. And it communicates to Paul, certainly, that his behavior was unacceptable and would not be empowered. Moreover, there's a little bit of an issue here in regards to the plaintiffs. They argue in their briefs heavily that the Utica Police Department officers should have stand guard over Paul Bumbalo when he was at the emergency room, and there should have been a follow-up phone call. Again, I highlight this is key. These are passive failures that this court has said, both Lewis and Okun, going all the way back to the Supreme Court's Deshani doctrine, that these passive actions are not actionable under a state-created danger theory. Is it your understanding of the state law that when an officer makes one of these civil mentally disturbed person arrests and transports that person to a hospital, that custody switches at that point to the hospital? Yes. So they would have no authority to go in and arrest him when the doctor, let's say hypothetically in the opposite. Say they take him to the hospital. The doctor says, yes, Paul needs to be involuntary committed. So you get into the 939 part of the mental hygiene code. So at that point, the officer has no authority. How long can that confinement last? That can last up to several weeks, Your Honor. Fifteen days, I think. Or you have hearings. Yeah, the extensions, exactly. So it could be at what point does the officer's duty terminate? That's the major point here. Moreover, moving to my conscious stocking point I'd like to bring up with, is if we look at the officers left their phone number with the hospital to be called if Paul was not committed, and that number was never called, those allegations are in the complaint. It makes it very, very clear that that's the facts of this case. Now, I would argue that in society in general when somebody gives you their phone number, the connotation is there is that they're expecting a call back. They are certainly not washing their hands of the situation as the district court said that these police officers did. Moreover, if we look at the Madigan case as well as Lewis and Okin, particularly Lewis and Okin, again, they talk about these passive failures to stand guard. This court has said that's categorically beneath deliberate indifference, conscious stocking behavior. Additionally, on Madigan, it talks about the competing constitutional rights that a police officer faces, and if there is that competing pool of constitutional rights, the decision that officer makes by definition is not conscious stocking. Now, we know two things. We know the officers used force on Paul, right? So there's a Fourth Amendment claim they have to worry about not using excessive force on Paul. Additionally, there's also a claim for deliberate indifference to serious medical needs, right? Because we know that Paul is completely out of touch with reality. He is in need of medical attention. That's the plaintiff's main contention against the hospitals, that they should have never discharged him. They should have committed him. So clearly the officers were under a duty to effect the 9-4-1 arrest first, which is the proper police procedure, because then you know you take him to the physician, the physician says, no, he's okay, he's got the mental state, and you're probably moving closer to being able to bring your probable cause to file the actual criminal charges, or the doctor says, no, we're going to commit him, there's certainly no mens rea there. You're not suggesting that the officers did not have probable cause to effect a criminal arrest, are you? They would need to have a doctor's opinion before they would have probable cause to arrest him for assault? Well, let me clarify that. At this point, given the representations that were made by Michael Bombalo and the acts that Paul had engaged in, I would say at that point it was questionable whether or not there was probable cause to criminally arrest Paul Bombalo, and the officers were then correct to employ... You're saying that if they had arrested him, but at any rate, isn't your point really that it's a reasonable choice? They have various options that they could follow in dealing with a case like this. Certainly there are cases where people are criminally arrested and are then brought to a hospital because they need immediate medical attention, and the police do stand guard because in that context the officer has made an arrest, and the police department assumes responsibility even if the person is being treated. But what you're telling us is there's another way to go in the case of mentally disturbed persons, and that's an equally available option for state intervention. Sure, absolutely. That's my argument, and my argument is the best practice is to go with the 9-4-1 arrest first because that gets the medical attention to Paul. Indeed, you don't even have the burden of showing that it is the best practice. That's not the issue. Correct. That's not the issue. That's just my argument. Right. The question that's actually before us is whether there's clearly established law that would prohibit that option from being exercised. Right, and I'll quickly move on to that point as I see my time is quickly expiring. And on the clearly established law point, I would like to particularly direct to the Supreme Court's decision starting with Alcott and going all the way up to this here to White v. Pauly, where it talks about you need particularity in the case law of the facts of the case such that the police officer then knows what to do. And if you look at how the district court defined clearly established law in this case, it essentially repeated the 14th Amendment. It said basically that there is decedent's right under the due press clause to be free of a state-created danger if serious physical harm was clearly established by the time the events in this lawsuit occurred. The 14th Amendment says, nor shall any state deprive any person of life, liberty, or property without due process of law. You think that's at the level of generality, which is not helpful. Correct. It's totally unhelpful to an officer. And if you think of it this way, as the court has opined in Gonzales with its objective reasonable analysis, the more generalized the clearly established law is, the wider the scope of what is objectively reasonable for an officer to engage in is, as is the case here, right? Because in this case, there was a 941 statute on the books. That's what the police officers did. They took him to the hospital, and they left their phone number to be called upon as relief. Totally reasonable behavior. And for these reasons, I would argue that the district court's decision on the motion to dismiss should be reversed. I see my time has expired. You have reserved a minute's rebuttal. All right, yes. Thank you, Your Honors. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Stephanie Palmer on behalf of the plaintiffs. Your Honors, on a de novo review, this Court must take all the allegations in the complaint and deem them as true. And also draw all reasonable inferences in favor of the plaintiff. And in this case, the defendants are not entitled to qualified immunity. The defendants in this case violated the decedent's constitutional rights to be free from bodily harms, to have their bodily integrity, to have personal security, under the state created danger exception. The defendants assisted in creating or increasing the dangers to the decedents by their acts. Their acts were both explicit and implicit in what they did. How do you affirmatively enhance it? Affirmatively enhance it? They affirmatively enhance it- Tell me how. What do they do? First taking Paul into custody, then transporting him- As of now, the defendants bring him to the hospital. Let's get to the point where they affirmatively enhanced it. They affirmatively enhanced it when they consciously made that decision, knowing that he was homicidal. When they walked away- When they walked away. Your adversary emphasizes that they left a phone number, but your view is that they had to stay there? Yes. But they could have been there for two weeks. No, Your Honor. They aren't doctors. They don't know. They could assume the man is crazy and that there's going to be some evaluative process going on, but they don't know. They may very well have assumed that it could be several days or two weeks. They can't have an encampment of the police at the emergency room, surely. No, but under Mental Hygiene Law 941, the defendants have a right to take him into custody. We don't dispute that they have that right. But then- No, no. Excuse me. Section 9.41 gives the officer the authority to remove the person to a hospital, and that's exactly what they did. And then at that point, it gives the hospital director the ability to retain the person for 15 days. That's Section 9.39. And I'm having trouble understanding why this is anything different than the officers arresting somebody criminally, and then after the person is arraigned, he's turned over to the corrections officers. And the police don't stand around waiting to see if the corrections officers will negligently let him go after he's incarcerated. Why isn't this the same sort of thing? They turn him over to the doctors, and now the doctors have custody. And they specifically tell the doctor, by the way, if you're going to let him go, let us know. It's different, Your Honor, in that in the criminal sense that you referred to, they are arraigned. They said, we are taking this person into custody now. Well, the doctor took him into custody, didn't he? No. He was brought to the emergency room. There was no admission into him. And 941 explicitly says that they can take him into custody, a person who appears to be mentally ill, and bring him to the hospital pending his examination or admission. There was no admission. Excuse me. That's an alternative. It says they may remove him to a hospital or a comprehensive treatment program, or pending going to the hospital, they're allowed to hold him in a safe and comfortable place. I take it that's more or less what they did when they stuck him in the back of the police car waiting for the ambulance or when they put him in the ambulance. That's an alternative. They could take him, if there's no hospital bed available or something like that, they're allowed to keep him in a safe and secure place pending the admission to the hospital. Or they can take him to the hospital. There's two alternatives. Right. They take him to the hospital. But when they still have custody of him, it's not saying there's no admission here, he's just put into the emergency room. So I guess I understand your point. You're saying, in effect, it's what sounds to me like it's negligent to leave him in the custody of the doctors until the doctors make some affirmative decision. But how is that comparable to cases like Okun where, I mean, I think there's a certain rhetoric that says it has to be affirmative. It seems to me that also is very passive. But it's a very different kind of passive. They show up repeatedly at the domestic violence calls and pal around with the guy and never arrest him and never take him into custody and never do anything but talk sports. And then his wife gets abused further and I think ultimately killed in that case. How is this comparable? They didn't just show up at the place and chat with Paul and say, I guess calm down a little bit and go away. They affirmatively arrest him. How is that affirmatively encouraging him to do whatever, to feel immune? Well, in Okun, as opposed to in this case, here they actually saw what Paul Bumalow had done. They actually saw how he had viciously beaten the dog, how he had assaulted, committed acts of domestic violence on his family members. So they actually witnessed, saw it. When they brought him to the hospital, they knew this. It's questionable whether they even told the hospital what happened with Paul Bumalow about his prior history of mental health issues, whether or not he was taking any of his medications. It's the officers really not doing their job and just saying, okay, he's here, he's out of our hands. Let's leave him here and walk away. Without knowing that the hospital was doing anything. Can we go back to my earlier question? He could have been there for 15 days, right? If he was admitted, yes. Well, look, the police don't make the decision on whether to admit somebody or whether to admit them just for observation or whether to observe them to decide whether they need to be held for observation. But when the police go to the hospital, they don't know if they set up an encampment, whether they would have to be there for three hours or for 15 days. That doesn't sound very reasonable. Your Honor, they still have a duty once they bring somebody there to make sure that that person is treated and make some determination of them, not just let them wait and wait in the waiting room or just sit there and see if anything happens. What is the source of law that makes it clear to the officer that, assume that I happen to agree with you that the law should say that, where is there a source of law either in the New York statutes or in a constitutional decision by anybody that says that when the police bring somebody to a hospital under section 9.41, they have to do what you would like to say they have to do? I don't think there is explicit written law on saying exactly what the procedures are, but common sense says it. And I think any reasonable person would know that you don't let somebody who is homicidal, who they saw commit acts of domestic violence, drop them off at the hospital and leave. Well, wasn't he in restraint when they left? At one point, yes, he was in restraint. He was in four-point restraint. He was in a four-point restraint. That means he was pinioned, right? But that doesn't mean- When you say they just left, they just left with him being utterly and completely immobilized and in the hands of medical professionals. They did leave under those circumstances. However, they had no idea if he was just going to be let out of the restraints. He was being restrained because, at that time, he was being volatile. Suppose they just hadn't responded to the 911 call at all. Are you suggesting that because they had probable cause to make an arrest, they are obligated to make a criminal arrest? Not if they had not responded, but I think they are obligated under domestic violence laws. Once they were there and saw the physical acts of domestic violence, they are obligated to do so. They are obligated under state law to make an arrest. That is correct. And they did something. They didn't make an arrest. They just brought him to the hospital under, I guess, technically what the police do call a 944. You said they were obliged to do something. They were obliged to do something because they were- And they did something consistent with the statute. And they dropped him off at a place where he would get attention. And they left him pinioned on a bed where he could do no harm. And in the hands of medical professionals, who would know a lot better than them, presumably, what ought to be done with him. Although he was at the hospital, there still was no admission for him to be there. He could have left. He could have left freely. There was nobody there to guard him. Well, as soon as once he was out of his restraints, which he was subsequently out of his restraints, he could have just left then. Which is ultimately what happened. The hospital, the defendants had a duty to stand guard there. They have a duty to watch over. Once they took him into their custody, even though they brought him to the hospital, it doesn't relieve them of any and all of their responsibilities. Especially under the facts and circumstances in this case. And once again, you acknowledge there is nothing anywhere in the law that says that the officers have that responsibility. You're saying that's just common sense? Your Honor, we have not found any written procedure or law that says that they must sit there and stay there with somebody once they bring him in. It's common sense that they would stay there until that person has been examined or until there's been some determination or admission. The hospital doesn't take him as a patient for that 15 days until they make that determination, until they've had that examination of him. And here, clearly, there was no examination. There was no admission. He was literally able just to walk out the door. Attached to the bed, presumably. No, Your Honor. He was ultimately released from those restraints. Thank you. We'll hear rebuttal. Thank you. May it please the court. First of all, there was some discussion from Your Honor in regards to the Oaken case. And as Your Honor pointed out, though it was a case where there was a repeated sustained inaction on behalf of the police officers, unlike this case, there's a further distinction to be made because this was a single incident. There's no allegation in the complaint that these police officers were familiar with Paul, that they knew he had mental problems, and that there were repeated times where they had just let him go. Secondly, there was some discussion as to the domestic violence law, the mandatory arrest law. What's alleged in the complaint is that they had probable cause for an animal cruelty charge. That is not a mandatory arrest law under the New York State domestic violence law. The only possible one there could be would be harassment, which Michael Bumbalow specifically said in his supporting deposition, which is in the complaint, which is essentially an affidavit saying he didn't want to press charges against Paul. So probable cause was evaporated for that, which would have been a mandatory arrest. And finally, plaintiff's counsel argued that the information given to the hospital was inadequate. Again, that's a passive failure on behalf of the defendants, not actionable under state-created danger. And lastly, it's not good law to say that the hospital is supposed to rely on what the police officer, who is not the medical professional's opinion was of what facts they knew. The hospital should be making their own assessment of Paul. That's the whole idea of the 941 statute, is to get the individual to the hands of a professional mental health care provider. That being said, I'm over my time. Unless there's any other questions, nothing further. Thank you both. We'll reserve decision. The final case on calendar United States versus Mundell is taken on submission. Please adjourn court.